**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | )<br>)<br>) |
| Applicant, | )<br>) |
| vs. | ) Case No. 09 C 7741<br>) |
| QUANTUM FOODS, LLC, | )<br>) |
| Respondent. | ) |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

The Equal Employment Opportunity Commission (EEOC) has filed an application to enforce an administrative subpoena it issued to Quantum Foods, LLC (Quantum). The EEOC issued the subpoena in the course of an investigation of a charge against Quantum for national origin discrimination. Quantum objects to the document requests in the subpoena, claiming that they are irrelevant to the investigation of the underlying charge. Quantum also contends that the subpoena improperly requests confidential information, its time frame is overly broad, and it is unduly burdensome. For the following reasons, the Court enforces the subpoena in part and defers the matter in part pending an evidentiary hearing.

**Background**

Quantum operates a plant in Bolingbrook, Illinois where it processes meat products, which it sells to stores, restaurants and consumers. Quantum also operates

Quantum Culinary, which does food and menu consulting for chain and independent restaurants. Quantum has a distribution center called Quantum Global Distribution Center that serves as a warehouse, and it owns the Choice One Foods plant, which it rents to an unrelated company. The majority of Quantum's employees are employed at the Bolingbrook plant, which has 1,106 employees. Quantum Culinary has 144 employees, Quantum Global Distribution Center employs fifty-nine, and Choice One Foods has one employee.

On March 19, 2009, Miguel Figueroa filed a charge with the EEOC alleging that during his employment as a butcher at Quantum's Bolingbrook plant, he was discriminated against based on his Hispanic national origin. He also alleged that Quantum retaliated by discharging him when he complained about being subjected to performance standards not required of his non-Hispanic co-workers. The EEOC notified Quantum of the charge on March 23, 2009.

During the investigation of his charge, Figueroa informed the EEOC that Quantum employs a large number of Polish employees in managerial and non-managerial positions and that his own supervisors were Polish. Figueroa alleged that Quantum treated non-Polish workers less favorably than Polish workers. He also claimed that he was disciplined and terminated for failing to meet standards not required of Polish employees. The EEOC reviewed the Bolingbrook plant's Employer Information Reports (EEO-1 forms) and found that it employs few African-Americans. The reports also showed that African-Americans and Hispanics are underrepresented at Quantum when compared to similar companies in the same geographic area.

2

The EEOC sent Quantum a request for information on May 28, 2009. In the request, the EEOC sought information concerning each facility owned or operated by Quantum, its corporate structure, its hiring procedures, job descriptions of every position at the facilities and qualifications for each position, and its record keeping policies. The EEOC also requested a list of persons who had applied but were not selected for positions with Quantum and a list of persons employed by the company since January 1, 2006. For each of these individuals, the EEOC requested the name; race or national origin; position or position applied for; date of application; date of rejection or hire; and the name, race and national origin of the primary rejection or hiring decision maker; copy of employment application and resume; last known home address; and all known home telephone numbers. For those who applied but were not hired, the EEOC also requested a copy of a driver's license or comparable identification (if applicable) and the reason for rejection. For those employed with the company, the EEOC requested their current employment status and, if applicable, the date of separation, reason for termination, and the name, race, and national origin of the primary decision maker in the separation. On June 1, 2009, the EEOC sent Quantum a second request for information. In this request, it sought copies of the company's employment advertisements and a list of its recruiting sources.

Quantum sent a response to the EEOC, dated June 12, 2009, in which it objected to the scope of the subpoena but agreed to submit information that it considered relevant to Figueroa's charge. Specifically, Quantum refused to provide the EEOC with information regarding its hiring, recruiting, and advertising policies and procedures. It also objected to listing all employees hired at all of its facilities since

3

January 1, 2006. Instead, Quantum provided the EEOC with the requested information regarding other butchers similarly situated to Figueroa at its Bolingbrook location.

On June 22, 2009, the EEOC served a subpoena requesting the information Quantum had objected to providing in response to the initial request. On June 26, 2009, Quantum submitted a petition to revoke or modify the subpoena, which the EEOC denied on September 22, 2009. The EEOC's decision instructed Quantum to comply with the subpoena on or before October 12, 2009. Quantum sent the EEOC a response on October 12, 2009. It contended that the information sought was beyond the scope of the allegations in the charge and that retrieving the requested information would be unduly burdensome.

On February 1, 2010, Quantum discussed the subpoena with the EEOC and agreed to provide general information regarding all its facilities (i.e., location and number of employees). It also agreed to provide general information regarding its hiring practices and procedures, job descriptions of its production positions, a list of its recruiting sources, and copies of its employment advertisements. Quantum continues to object to the subpoena, however, to the extent that it seeks information concerning job applicants who have been denied employment, current and past employees, the names of the decision makers in the hiring, termination, or rejection process, and the reasons for those decisions. It also contends that the subpoena is overly broad because it seeks information concerning all Quantum facilities and because it is not limited to the butcher position, the job Figueroa held while employed at Quantum.

## Discussion

**1. Enforceability of subpoena**

The EEOC has jurisdiction to investigate the charges filed with its office alleging unlawful employment practices. 42 U.S.C. § 2000e-5(b). The EEOC is authorized to issue subpoenas requiring the production of evidence. 29 C.F.R. § 1601.16(a). The party served with the subpoena may seek its revocation or modification within five days of service. *Id.* § 1601.16(b)(1). If the EEOC determines that it will uphold all or part of the subpoena and the party served does not comply, the EEOC may institute proceedings to enforce the subpoena. *Id.* § 1601.16(d).

Because administrative subpoena enforcement proceedings "are designed to be summary in nature," a court's oversight role is limited. *EEOC v. Tempel Steel Co.*, 814 F.2d 482, 485 (7th Cir. 1987); *see also EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 649 (7th Cir. 2002). "As long as the investigation is within the agency's authority, the subpoena is not too indefinite, and the information sought is reasonably relevant [to the underlying charge], the district court must enforce an administrative subpoena." *Tempel Steel Co.*, 814 F.2d at 485.

**a. Relevance**

Title VII of the Civil Rights Act of 1964 provides that, "[i]n connection with any investigation of a charge[,]" the EEOC shall have access to any evidence that "is relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a). Quantum contends that the Court should not enforce the EEOC's subpoena because it requests information that is irrelevant to the underlying charge. Quantum argues that requests

for information concerning its hiring and recruiting practices and procedures are irrelevant to the charge because Figueroa does not allege that he was discriminated against in the hiring process. Quantum also objects to the subpoena insofar as it seeks information regarding all job positions; it seeks to limit the subpoena to information concerning the position of butcher. In addition, because Figueroa worked at its Bolingbrook facility, Quantum contends that requests regarding job positions and hiring practices at its other locations are irrelevant to the charge.

Figueroa's charge alleges that he suffered national origin discrimination while working at Quantum. He also claims that Quantum terminated his employment in retaliation for his complaints to higher-ups regarding the discrimination he experienced. In *United Air Lines*, the Seventh Circuit cited cases that "shed[ ] significant light on the meaning of 'relevance' in the subpoena context." *United Air Lines,* 287 F.3d at 652. Among them is the decision of the Sixth Circuit in *Blue Bell Boots, Inc. v. EEOC*, 418 F.2d 355 (6th Cir. 1969), which the Supreme Court also cited with approval in *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68 n.20 (1984).

In *Blue Bell Boots*, seven African-American employees alleged that they were discriminated against while employed and then discharged for reasons of race or color. The Sixth Circuit stated that "racial discrimination is 'by definition class discrimination' and . . . that, in determining whether an employer practiced racial discrimination, the existence of discrimination in job classifications or hiring situations other than those of the complainants 'may well justify an inference that the practices complained of . . . were motivated by race factors.'" *United Air Lines,* 287 F.3d at 652 (citing *Blue Bell Boots*, 418 F.2d at 358). The Seventh Circuit identified the Sixth Circuit's determination

in *Blue Bell Boots* as one "example of the permissible scope of the subpoena." *Id.* at 653. Thus, the Seventh Circuit has acknowledged that in cases of wrongful termination, the EEOC may investigate an employer's job classification and hiring practices.

Quantum contends that *Blue Bell Boots* is distinguishable from this case because seven different complainants filed charges in that case alleging company-wide discrimination against minorities. The Sixth Circuit, however, did not base its decision on the fact that seven different complainants filed charges. Rather, the Court said that it "consider[s] an employer's 'pattern of action' relevant to the [EEOC's] determination of whether there is reasonable cause to believe that the employer has practiced racial discrimination." *Blue Bell Boots*, 418 F.2d at 358. Thus, an employer's job classification and hiring practices are relevant to a charge alleging race (or national origin) discrimination and wrongful discharge on that basis. Furthermore, it is well established that the EEOC may investigate employment practices "other than those specifically charged." *United Air Lines*, 287 F.3d at 653 (citing *EEOC v. Roadway Express, Inc.*, 750 F.2d 40, 43 (6th Cir. 1984)).

Quantum also claims that this case is similar to *United Air Lines*, in which the Seventh Circuit determined that the EEOC's subpoena was irrelevant to the underlying charge. In *United Air Lines*, the EEOC sought information regarding all of the company's benefit programs. "The 'policy' at issue in the charge [, however, was United Air Lines'] failure to pay into the French social security system." *Id.* at 655. The court found that "[n]othing in the charge suggest[ed] systemic discrimination on the

basis of national origin or sex with respect to life, health, disability, and leave benefits." *Id.* The information regarding other benefit programs was irrelevant because the underlying charge was specifically based on the company's failure to pay into the French social security system. By contrast, Figueroa's charge alleges he suffered discrimination while employed at Quantum and that he was wrongfully terminated on the basis of national origin. The charge's scope is thus broader than the charge at issue in *United Air Lines*. *See, e.g., EEOC v. Dial Corp.,* No. Civ. A. 99-3356, 2002 WL 1974072, at * 4 n. 4 (N.D. Ill. July 23, 2002). The Court concludes that the subpoena's requests for information regarding the company's hiring and recruiting practices and procedures, including for job positions other than that of butcher, are properly enforceable.

    Quantum also claims that the EEOC's subpoena is irrelevant to the underlying charge to the extent it seeks information concerning the job positions and hiring practices of its facilities other than the Bolingbrook plant. The EEOC argues that the scope of its subpoena is appropriate because the same employment application is used across facilities and the same human resources personnel are responsible for all hiring and recruiting. The other facilities, however, do not process or sell meat products. Quantum's vice president of human resources, Sean Spielman, has stated in an affidavit that Quantum's other facilities consist of a culinary business, a distribution center, and a plant that is rented out to an unrelated entity. Spielman Decl. ¶ 2.

    "[A]lthough the legitimate scope of the [EEOC's] subpoena power includes information that 'might throw light' upon the inquiry raised by the complaint, 'the might' is 'an indication of a realistic expectation rather than an idle hope that something may

be discovered.'" *United Air Lines*, 287 F.3d at 653 (quoting *United States v. Harrington*, 388 F.2d 520, 524 (2d Cir. 1968)).  The Quantum entities are related to each other.  Figueroa's charge and allegations, however, are specific to his experiences at the Bolingbrook plant.  This is not a case in which those responsible for the alleged discrimination have responsibilities regarding other Quantum facilities.  *Compare, EEOC v. Deb Shops, Inc.*, No. 94-5985, 1995 WL 579541, at *3-5 (N.D. Ill. Sept. 28, 1995) (request for employment information regarding thirteen store district that encompassed the store that had declined to hire the charging party as manager was proper because all the stores shared the same district supervisor who made the final hiring decision for management positions within the district).  Other than the shared employment application and human resources department, the EEOC has presented no information that links Figueroa's employment discrimination and wrongful termination claims to persons with responsibilities in or practices applied at Quantum's other facilities.

The Seventh Circuit has also advised that "in the context of an investigation of an individual complaint, it might well be most natural to focus on that employing unit or work unit from which came the decision of which the individual complainant complains; within such a unit the EEOC might well need a wide spectrum of . . . data in order to illuminate the general policies bearing on the complainant's situation." *United Air Lines*, 287 F.3d at 654.  Figueroa's employing unit in this case is Quantum's Bolingbrook plant.  On the record before the Court, an investigation extending to Quantum's other facilities at this time would amount to a "fishing expedition." *Id.* at 653 ("The requirement of relevance, like the charge requirement itself, is designed to cabin the

EEOC's authority and prevent fishing expeditions.") (internal quotation marks and citation omitted). For these reasons, the Court declines to enforce the subpoena to the extent it seeks information concerning facilities other than Quantum's Bolingbrook plant.

### b. Time frame of subpoena

Quantum claims that the subpoena is overly broad because it seeks information regarding employment decisions made prior to May 27, 2008. Because Title VII requires that a charge be filed within three hundred days of the alleged discriminatory act to be timely, Quantum argues that the EEOC is not entitled to information regarding hiring and termination decisions that occurred more than three hundred days before the March 19, 2009 charge.

Though a charge must be filed within three hundred days of the discriminatory conduct, the EEOC is not limited to information within that period to investigate the charge. In fact, "the statute [does not] bar an employee from using . . . prior acts as background evidence in support of a timely claim." *Nat. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Figueroa had been employed at Quantum for eight years by the time he was terminated. It is not unreasonable for the EEOC to seek four years of information to investigate the charge.

### c. Confidentiality

Quantum contends that the EEOC seeks information that is sensitive and confidential. "[C]onfidentiality [, however,] is no excuse for noncompliance since Title VII imposes criminal penalties for EEOC personnel who publicize information obtained in the course of investigating charges of employment discrimination." *EEOC v. Bay*

10

*Shipbuilding Corp.*, 668 F.2d 304, 312 (7th Cir. 1981); *see also* 42 U.S.C. §§ 2000e-5(b) & 2000e-8(e). Although Quantum contends that the protections Title VII offers are insufficient, the Supreme Court has determined that courts must "stand behind the breakwater Congress has established: unless specifically provided otherwise in the statute, the EEOC may obtain 'relevant' evidence. Congress has made the choice. If it dislikes the result, it of course may revise the statute." *Univ. of Pa. v. EEOC,* 493 U.S. 182, 194 (1990). Moreover, the EEOC has stated that it will not seek the contact information of the company's managerial or supervisory employees. Thus, Quantum may not decline to comply with the subpoena based on its claims of confidentiality.

**2.    Undue burden**

A Court may decline to enforce a valid subpoena if the request is unduly burdensome. *United Air Lines*, 287 F.3d at 655. A subpoena is excessively burdensome if "compliance would threaten the normal operation of its business." *EEOC v. Quad/Graphics, Inc.*, 63 F.3d 642, 648 (7th Cir. 1995) (citing *Bay Shipbuilding Corp.*, 668 F.2d at 313). Quantum objects to the subpoena because it requests information identifying all current and former employees and those who applied for employment and were not hired since January 1, 2006. It also objects to providing information concerning the decision makers and the reasons for hiring and firing decisions because it claims this information is not readily available. Quantum supports its objection with an affidavit by Spielman, who would have primary responsibility for compiling the information sought by the subpoena.

Spielman states that since January 1, 2006, Quantum has employed more than 2,600 employees and has terminated approximately 1,304 employees. Each employee's file contains numerous documents compiled during employment. Furthermore, the personnel files of employees terminated prior to January 2, 2009 are stored in a warehouse, which means that a staff member must work with a forklift operator to locate and retrieve the boxes. Spielman estimates that it would take his staff approximately 871 hours to "review, compile, copy and produce the documents requested." Spielman Decl. ¶ 24.

Spielman also states that Quantum no longer has applications predating January 1, 2008. Since January 1, 2008, Quantum has received more than 1,500 applications for employment for more than thirty separate positions. Spielman estimates that it would take his staff approximately 128 hours to "review, compile, copy and produce the documents requested" relating to employment applicants. *Id.* ¶ 25.

Spielman further states that the company does not maintain a database that includes the name, race and national origin of each applicant's or terminated employee's decision maker and the reason for the decision. His time estimates therefore do not include the time it would take to interview each decision maker involved in the hiring and firing process since January 1, 2006. The estimates, Spielman also states, likewise do not include the time it would take to redact employees' Social Security numbers and other sensitive information.

In total, Spielman estimates that it would take his department around 1,000 hours to produce the files it has that are responsive to the EECO's request. It is

unclear whether Spielman's time estimates are based on the time it will take to produce files of applicants and employees company-wide. This estimate may no longer be accurate in light of the Court's decision to enforce the subpoena only with respect to the Bolingbrook plant. Nonetheless, the Bolingbrook plant employs a significant majority of the workers for the Quantum-related entities. Thus, to the extent Spielman would alter his time estimates based on this modification, it is unlikely that he would change them by much.

The EEOC has agreed to modify its subpoena to help ease Quantum's burden. Specifically, it will not insist that Quantum provide information of those who applied prior to January 1, 2008, applicants' driver's licenses, the identity of persons who made the hiring decisions, or the reasons for the decisions. Instead, it asks that Quantum identify by name, race and national origin those responsible for making hiring decisions. The EEOC also agrees not to seek the reason for an employee's separation or the name, race, and national origin of the decision maker regarding each separation.

In light of these modifications, the EEOC now requests the following information regarding Quantum applicants since January 1, 2008: name, race, national origin, position applied for, name of hiring source, application and resume, last known home address, and all known home telephone numbers. The EEOC states that this information is contained in Quantum's employee applications and that copies of those applications are sufficient to comply with its request. Spielman estimated that it would take his staff 128 hours to retrieve the files from storage and produce the relevant documents to the EEOC. Although Spielman may have based his estimate on the EEOC's original company-wide request, a commitment of 128 hours of time for

13

photocopying is not unduly burdensome. Because the EEOC is entitled to review documents relevant to the underlying charge, Quantum must produce these documents. See 42 U.S.C. § 2000e-8(a).[1]

The EEOC continues to seek information concerning Quantum employees from January 1, 2006 through the present, specifically, each individual's: name, race and national origin, position, date of hire, current employment status, date of separation (if applicable), reason for separation (if applicable), last known home address, and all known home telephone numbers. As indicated earlier, Spielman estimated that it would take 871 hours to review, copy and produce the documents requested company-wide; the amount need for Bolingbrook-related documents is probably a bit less.

The EEOC contends that Spielman has grossly overestimated the amount of time it will take his staff to comply with the request. Prior to filing this action, the EEOC received a letter from Quantum stating that "identifying the information requested by the EEOC's subpoena will take one (1) employee at least one whole week. Retrieving and reviewing the information requested by the EEOC's subpoena will take one (1) employee at least one additional whole week." Baran Decl. ¶ 4(a), Ex. 9.

Quantum contends that the original estimate was inaccurate because it "failed to take into account the time it would actually take for an employee to review each file, pull

---

[1] The EEOC also requests the driver's licenses or identification documents of applicants who have not identified their race and national origin on their employment application. Spielman stated that copies of driver's licenses are kept with that person's employment eligibility verification form (I-9 form). Since these forms are typically filled out only after an applicant has been hired, it is unclear whether Quantum has copies of each applicant's driver's license. The EEOC requests such identification documents, however, "if available." The request therefore allows for the possibility that copies of driver's licenses and similar documents are unavailable.

the requested information, and compile the responsive information." Resp. Br. at 13 n.4. The EEOC argues that the Court should not accept Quantum's explanation, because in its earlier letter, Quantum stated that it took into account the amount of time it would take to locate, retrieve and review the information requested. It also argues that Quantum's undue burden argument lacks credence because the company does not indicate whether it has any of the information requested in a computer database.

The parties' arguments on the undue burden issue regarding the requests relating to Quantum employees from 2006 through the present leave the Court somewhat at sea. If Quantum's 871-hour estimate is reasonably accurate, then the subpoena would indeed pose an undue burden given the fact that the investigation involves a claim of discrimination by a single employee. But as indicated, Quantum's earlier letter to the EEOC casts some doubt on the accuracy of Spielman's later estimate. The Court believes that a brief evidentiary hearing will be required to resolve the undue burden issue – unless, of course, the parties are able to work out a narrower, and thus less burdensome, scope.

### Conclusion

For the reasons stated above, the Court grants in part the EEOC's motion to enforce its subpoena [docket no. 4] The case is set for a status hearing on May 10, 2010 at 9:30 a.m. for the purpose of setting a date for the evidentiary hearing described above. The Court intends to set the hearing for a date in early June.

                                                       MATTHEW F. KENNELLY

Date: April 26, 2010                                      United States District Judge